Hon. John C. Coughenour

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY PELAYO,<br><br>Defendant. | No. CR 18 – 217 JCC<br><br>DEFENDANT'S SENTENCING MEMORANDUM<br><br>Sentencing: Tuesday, November 23, 2021 – 9:00 a.m. |

**1. Defense Recommendation**

The defense urges the Court to find that application of the mandatory minimum terms prescribed by law would violate the Eighth Amendment's proscription of cruel and unusual punishments. It asks the Court to sentence Mr. Pelayo without regard to those statutory minimums and impose a sentence of 120 months, with an appropriate term of supervision to follow. If the Court declines to find the mandatory terms unconstitutional, the defense urges the Court to impose a sentence of 180 months, the minimum sentence allowed by law.

DEFENDANT'S SENTENCING MEMORANDUM – 1

Law Offices of Stephan R. Illa, Inc. P.S.
P.O. Box 10033
Bainbridge Island, WA 98110
(206) 464-4142

## 2. USSG Calculations

The guidelines call for enhancements that arbitrarily, unfairly, and dramatically increase the advisory sentencing range and result in a substantively unreasonable sentencing recommendation.[1] The defense submitted written objections to the USSG calculations of the United States and the Probation Department.[2]

In addition, Defendant Pelayo adopts and incorporates by reference the drug quantity calculation objections detailed in co-defendant Isham's sentencing memorandum.[3] If limited to the quantities found to have been proved beyond a reasonable doubt, the converted weight of the drugs yields a Base Offense Level of 34.[4] Furthermore, Defendant Pelayo adopts and incorporates by reference the objection to the enhancement for "knowingly marketing [one substance] as another substance" as set forth in co-defendant Isham's sentencing memorandum.[5]

## 3. Argument

### 3.1. Imposing a Mandatory 15-year Sentence on Mr. Pelayo would Violate the Eighth Amendment.

For non-capital offenses, the Eighth Amendment is violated when sentence in a non-capital case is "grossly disproportionate to a particular defendant's crime."[6] To determine if a particular sentence is "grossly disproportionate for a particular defendant's crime," a Court begins by comparing the gravity of the offense and the severity of the sentence.[7] "In the rare case in which this threshold comparison ... leads to an inference of gross disproportionality" the Court

---

[1] Here, adherence on guidelines driven principally by drug quantity estimates results in virtually no distinction between the sentences for defendants like Mr. Pelayo and those for the most dangerous offenders.
[2] Defendant's Objections & Proposed Revisions to the Draft Presentence Report, Docket 937 (10.26.2021).
[3] Defendant Isham's Sentencing Memorandum, Docket 963 (11.16.2021) at 4-5.
[4] Id. at 5.
[5] Id. at 6, fn. 8.
[6] Graham v. Florida, 560 U.S. 48, 60 (2010).
[7] Id.

DEFENDANT'S SENTENCING MEMORANDUM – 2

LAW OFFICES OF STEPHAN R. ILLA, INC. P.S.
P.O. BOX 10033
BAINBRIDGE ISLAND, WA 98110
(206) 464-4142

should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions.[8] If this comparative analysis "validates an initial judgment that the sentence is grossly disproportionate," the sentence is cruel and unusual. [9]

The man convicted in this case, Mr. Pelayo, is now 35 years old. According to estimates from the Social Security Administration, an average American male who is 35 in 2021 will live about another 46 years.[10] Insurers provide far more precise lifespans estimates. For example, after taking into account factors like Mr. Pelayo's individual's height, weight, blood pressure, cholesterol, exercise, and alcohol use, one insurer's life expectancy algorithm projects only 34 additional years for this defendant.[11] Moreover, incarceration significantly reduces a person's life expectancy. The Second Circuit recently recognized: "[A]s a statistical matter, the life expectancy of an incarcerated person drops 2 years for each year of incarceration."[12]

"Imprisoning an offender until he dies alters the remainder of his life 'by a forfeiture that is irrevocable.'"[13] Life in prison is most severe sanction available for a nonhomicide offense.[14] A term of life without the possibility of release shares "some characteristics with death sentences that are shared by no other sentences."[15]

---

[8] Id.
[9] Id..
[10] The Social Security Administration's life expectancy calculator predicts 46 additional years, based on nothing but gender and present age.
[11] Running Mr. Pelayo's factors through the John Hancock Insurance Company's life expectancy algorithm projects approximately 34 additional years [for a total life expectancy of 69 years].
[12] United States v. Jenkins, No. 14-4295-cr, slip op. at 7, n. 2 (2nd Cir. 04.17.2017) (citing E.Patterson, The Dose-Response of Time Served in Prison on Mortality, 103 Am.J.of Pub.Health 523, 526 (2013)).
[13] Graham v. Florida, 560 U.S. at 60. (citing Solem v. Helm, 463 U.S. 277, 300–301 (1983)).
[14] Graham v. Florida, 560 U.S. at 92 (Roberts, C.J., stating the obvious in concurrence).
[15] Miller v. Alabama, 567 U.S. 460, 474–75 (2012) (internal citations omitted).

DEFENDANT'S SENTENCING MEMORANDUM – 3

The sentence sought here is far greater than that imposed on similarly situated defendants facing the same primary sentencing guidelines as Mr. Pelayo. As a result, the proposed mandatory sentences would be "grossly disproportionate" in violation of the Eighth Amendment.

### 3.2. If the proportionality challenge is denied, the Court should impose 180 months, the minimum sentence allowed by law.

The law requires the Court to "impose a sentence sufficient, but not greater than necessary, to comply with [the purposes of sentencing]." [16] This is the "primary directive" of the sentencing statute. [17] Even when the guidelines were mandatory, the Supreme Court declared, "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." [18]

#### 3.2.1. The nature and circumstances of the offenses of conviction were presented at trial.

The Court observed the testimony of the witnesses and saw the exhibits introduced by the parties. The government pretends that the case it presented was overwhelming. The jury, of course, saw things differently, acquitting Mr. Pelayo of one § 924(c) count, two counts of attempted possession, and three counts of money laundering. [19]

Trial revealed serious weaknesses in the government's case. For example, the government's forensic chemists admitted that the only way to determine whether a pill contains fentanyl is through chemical testing. However, they conceded that only a few of the thousands and thousands of pills submitted for analysis were ever tested. The chemists said they did not

---

[16] 18 U.S.C. § 3553(a) (emphasis added).
[17] United States v. Ranum, 353 F.Supp.2d 984 (E.D. WI 2005).
[18] Koon v. United States, 518 U.S. 81, 113 (1996).
[19] See Verdict Form, Docket 857 (08.03.2021).

DEFENDANT'S SENTENCING MEMORANDUM – 4

test all the pills because their "office policy" provides that only 28 or 29 pills need be tested, never more, no matter how many pills were submitted for analysis. No evidence justifying the scientific basis for this policy was introduced, although the chemists helpfully pointed out that it was faster and less costly to test only 28 or 29 pills instead of thousands.

### 3.2.2. The history and characteristics of Mr. Pelayo have been carefully detailed in sentencing materials.

The defense has submitted evidence of his good qualities for consideration. Throughout his life, Mr. Pelayo has worked hard to support his family and care for those closest to him. His family and friends have submitted letters to the Court describing this man's character and devotion to his family.

Although he has a criminal history, Mr. Pelayo's past offenses are relative minor and many years old. This is the most significant mark on his life and represents the first time Mr. Pelayo faces serious time behind bars.

While incarcerated before trial and sentencing, Mr. Pelayo has endured serious hardships. His time at the Federal Detention Center was marked by repeated lockdowns, impositions of random quarantines, and restriction (often utter prohibition) of communications with legal or social visitors. The institution where he was held was overrun with COVID-19 infections, both among the staff and the inmates.

Added to the hardships inherent in pretrial detention was a layer of uncertainty and despair created by repeated continuances of the trial date over defense objections. Worse still, the Court that handled pretrial matters in this case left the defendants with no trial date at all. The cruelty of an endless stream of continuances was bad enough without being followed by an indefinite time with no trial set and no expectation of ever getting a day in Court.

And Mr. Pelayo dares to hope for a future beyond prison walls. He has an impeccable record at the Federal Detention Center. Institutional staff rely on him to act responsibly in his job duties and as an orderly. He has pursued and completed the few educational opportunities available to him. And he has taken positive steps to plan for the future. Mr. Pelayo hopes for placement at Stafford-FCY, where he can add to his construction training and expertise.

**3.2.3. Deterrence** is in the eye of those to be deterred. A ten- or fifteen-year term of imprisonment certainly represent a significant sentence. Either should be sufficient to deter a would-be drug trafficker from breaking the law. Either would also be quite enough to deter Mr. Pelayo from future misconduct.

The government expresses "particular concern with respect to Mr. Pelayo" because years ago he sent a text to his cousin (co-defendant Tong) declaring "I'll never quit." [20] That is what he said then, but what's he saying now? Has his tune changed since he was arrested? Have the many months in the federal gulag led him to revise his opinion? Has he been led to absorb the serious consequences of drug dealing yet? The answer to these annoying rhetorical questions is, *of course*. The defense submits that Mr. Pelayo's letter and impending allocution provide powerful evidence that specific deterrence can be accomplished here is a sentence far less than that demanded by the government.

Two additional aspects of deterrence should be considered in this case. If imposed, the excessively harsh sentences sought by the United States will certainly deter defendants from going to trial. I have never seen this Court impose a "trial penalty" on a defendant who

---

[20] *See* USA's Sentencing Memo, Docket 962 (11.16.2021) at 15.

exercised his right to take his case before the jury, even where the accused took the stand in support of his claims of duress and was convicted.

On the other hand, the excessively lenient sentences sought for the government's informants will encourage those accused in multi-defendant drug conspiracy prosecutions to be the first to speed-dial the prosecution for favorable treatment.

**3.2.3.   Imposition of a fine** is unjustified here.  Mr. Pelayo has been incarcerated since his arrest.  Although he had retained counsel to represent him in this case, he ran out of funds quickly and asked the Court to appoint lawyers for him.  He submitted an affidavit of indigency, and his request for appointed counsel was granted.

The government now insists that a significant fine is warranted based on an unproved assertion that "Mr. Pelayo made millions of dollars in profits from this conspiracy." [21]  This assertion is apparently based on text messages in which Mr. Pelayo told his cousin he was making lots of money and "he could make a million dollars quickly." [22]  The government also refers to photos and videos showing cash sent to the cousin, although no estimate has ever been made of the amounts displayed.  From this thin showing, the government concludes: (1) Mr. Pelayo made millions in profit; and (2) Mr. Pelayo still retains the millions.

The attempt to forestall disagreement by asserting "there is no question" about the truth of a proposition is sure sign that the proposition itself is unsupportable.  Here, the United States declares, "There is no question that Mr. Pelayo has the ability to pay a fine." [23]  Really?  Even cursory consideration of the issue yields many questions:

---

[21] Id.
[22] Id..
[23] Id.

DEFENDANT'S SENTENCING MEMORANDUM – 7                    Law Offices of Stephan R. Illa, Inc. P.S.
P.O. Box 10033
Bainbridge Island, WA  98110
(206) 464-4142

- How many millions in profits [net or gross?] did Mr. Pelayo earn?

- Where have these millions been hiding?

- What makes you think Mr. Pelayo has access to these funds now?

- How did you come to decide on a fine of "one million dollars?" [24]

Guesswork and wishful thinking are no substitute for evidence. Here, the evidence shows that the government grabbed everything it could find that was in Mr. Pelayo's possession and kept most of it. The man is indigent. Imposing a fine on him where, as here, he has no ability to pay it violates the Equal Protection Clause. [25]

**3.2.4. Return of personal property** should be ordered. The United States admits that it seized valuable assets that are "presently held as evidence and not for purposes of forfeiture." [26] Six vehicles are identified in the government's sentencing memorandum, but other personal property was seized as well. The other items include computers, phones, keys, digital media, documents, and a religious statute. [27] These items have no evidentiary value and are not being sought through forfeiture.

Mr. Pelayo requests the return of these items pursuant to Rule 41(g). [28] The Fifth Amendment to the United States Constitution prevents the government from depriving any person of his property without "due process of law." [29] Even the Government's broad powers in

---

[24] The specified amount carries with it some serious baggage. *Cf*. Dr. Evil in <u>Austin Powers: International Man of Mystery</u> (PG-13 1997).
[25] <u>Tate v. Short</u>, 401 U.S. 395 (1971).
[26] <u>Id</u>.
[27] *See generally* T.Wheeler, DEA-6: Report of Investigation (05.31.2019) at ¶ 1 [004578]. Specific items seized are listed at ¶ 7, p. 6 [004583]. *See also* Return on Search Warrant [006513].
[28] Fed.R.Crim.P. 41(g) (a person "aggrieved by … the deprivation of property may move for the property's return").
[29] U.S. Const. amend. V.

DEFENDANT'S SENTENCING MEMORANDUM – 8

Law Offices of Stephan R. Illa, Inc. P.S.
P.O. Box 10033
Bainbridge Island, WA 98110
(206) 464-4142

forfeiture proceedings are limited by this constitutional constraint.[30] Property seized by the government as part of a criminal investigation "must be returned once criminal proceedings have concluded, unless it is contraband or subject to forfeiture."[31]

Rule 41 recognizes a District Court's equitable jurisdiction to order return of property for just cause.[32] At the conclusion of a criminal proceeding, the evidentiary burden for a Rule 41(g) motion shifts to the government to demonstrate it has a legitimate reason to retain the seized property.[33] At that point, the burden on the government is heavy because there is a presumption that the person from whom the property was taken has a right to its return.[34]

In this case, the government's continued retention of Mr. Pelayo's personal property is unjustified and violates his right to due process of law. This personal property is not being held as evidence of any crime, nor is it the subject of any forfeiture proceeding. Thus, all of it should be returned. Even if the items seized from Mr. Pelayo may not appear to be of especially great monetary value, those items should be returned. The constitutional requirements of due process protect all persons against arbitrary seizures of their property, regardless of its extent or value.

**3.2.5. Sentencing disparities** justify a lower term for Mr. Pelayo. The disparate sentences being handed out to co-defendants in this case are shocking and unjustifiable. To date, every defendant who pleaded guilty has received a sentence of time served. This is true whether or not the defendant provided information or testified at trial.

---

[30] *See generally* Austin v. United States, 509 U.S. 602 (1993).
[31] United States v. Chambers, 192 F.3d 374, 376 (3rd Cir. 1999).
[32] *See* United States v. Martinson, 809 F.2d. 1364 (9th Cir. 1987). *See also* Bertin v. United States, 478 F.3d 489, 492 (2nd Cir. 2007).
[33] United States v. Chambers, 192 F.3d at 377.
[34] United States v. Albinson, 356 F.3d 278 (3rd Cir. 2004).

The example of cooperating co-defendant Griffin Thompson is representative. Mr. Thompson admitted dealing narcotics, including Percocet and fentanyl, and marijuana for over nine years between 2009 and 2018. But he is not a "prolific" dealer like Mr. Pelayo, whose conspiratorial conduct spanned over the course of three years according to the prosecution. Instead, the government gently characterizes Mr. Thompson's history as "not without fault." [35] Prosecutors describe Mr. Thompson's "history and characteristics" in terms starkly different from those hurled at Mr. Pelayo. Mr. Thompson, we are told, is "intelligent, well-spoken, and thoughtful" and he "has a supportive family." [36] The government mildly concludes that Thompson's **nine years** of slinging drugs "suggests some period of confinement is warranted." [37] Prosecutors asked for two years, but the Court imposed time served.

Disparities in dispositions imposed in other cases also abound. Defendants convicted of dealing fentanyl in this district have received sentences far less than those proposed for Mr. Pelayo. [38] This is true even where deaths resulted directly from drugs distributed by those defendants. This is true even where those defendants had serious prior convictions for dealing drugs. And it is true even where those defendants possessed far more serious weapons [fully automatic machine guns and grenades] and engaged in far more dangerous conduct [selling fully automatic weapons to others]. Thus, defendants with far more serious criminal histories who engaged in the same type of drug trafficking activities received sentences very far below the term

---

[35] This line was offered up in the United States' sentencing memorandum regarding co-defendant Thompson. See USA's Sentencing Memo, US v. Thompson, CR 18-217 RSM, Docket 881 (09.03.2021) at 3.
[36] Id. at 2.
[37] Id. at 3.
[38] See, e.g., United States v. Casablanca, CR 20-135 RSL; United States v. Irons, CR 19-035 RAJ; United States v. Normandia, CR 20-110 RSL; United States v. Nunez, CR 20-097 RSM; United States v. Smith, CR 17-218 RSL; United States v. Witters, CR 18-314 JCC.

DEFENDANT'S SENTENCING MEMORANDUM – 10

LAW OFFICES OF STEPHAN R. ILLA, INC. P.S.
P.O. BOX 10033
BAINBRIDGE ISLAND, WA 98110
(206) 464-4142

demanded here for Mr. Pelayo. Even those defendants who possessed and sold illegal machine guns and sawed-off shotgun received lower sentences.

**3.2.6. Just punishment**, according to the government, is achieved if its "recommend sentence is far below the guidelines range of life in prison." [39] We are told that the twenty-five-year term proposed here "gives Mr. Pelayo the opportunity to reunite with his family in middle life." [40]

This is nonsense. The man is already 35 years old. If the government gets its wish, he will be lucky to leave prison before he is 60. This is not "the middle of life" for anyone. At least on this planet.

## 4. Conclusion

Imposing a term at the applicable mandatory minimum is proper because it provides adequate punishment for this defendant and would provide a significant deterrent to anyone who might consider violating federal drug laws. It serves each of the purposes identified in 18 U.S.C. § 3553(a) and provides a significant but truly just sanction.

Respectfully Submitted on November 17, 2021.

LAW OFFICES OF STEPHAN R. ILLA, INC., P.S.

Stephan R. Illa
WSBA No. 15793
Attorney for Defendant

LAW OFFICES OF TERRY KELLOGG

Terry Kellogg
WSBA No. 6452
Attorney for Defendant

---

[39] USA's Sentencing Memo at 15.
[40] Id.

LAW OFFICES OF STEPHAN R. ILLA, INC. P.S.
P.O. BOX 10033
BAINBRIDGE ISLAND, WA 98110
(206) 464-4142